## TONGS *v.* STATE.

## Opinion delivered September 24, 1917.

1. FORGERY—SUFFICIENCY OF EVIDENCE.—The evidence held sufficient to warrant a conviction of uttering a forged instrument.

2. CONFESSIONS—IMPROPER INFLUENCE.—When improper influences have been used to obtain a confession, the presumption arises that a subsequent confession of the same crime flows from that influence; however, such presumption may be overcome by positive evidence that the subsequent confession was given free from undue influences.

3. CONFESSIONS—VALIDITY—TEST.—In determining whether a confession was voluntarily made, the trial court will look to the whole situation and surroundings of the accused, and its finding that the confession was free from taint of official inducement will be upheld where there is evidence to support it.

4. APPEAL AND ERROR—CONTINUANCE—DILIGENCE—ABSENT WITNESS. —A new trial will not be granted on the ground of new evidence, where the defendant does not show the exercise of proper diligence.

5. APPEAL AND ERROR—MULTIPLICATION OF INSTRUCTIONS.—The court is not required to multiply instructions on the same point.

6. FORGERY—PERMISSION TO SIGN NAME.—Defendant was charged with uttering a forged check signed "T. J. Smith," and signed by one Joe Smith, who was the son of T. J. Smith. It appeared that

T. J. Smith had permitted his son to sign his name, but had withdrawn the authority and so notified the bank. *Held,* under the facts that defendant was guilty as charged.

Appeal from Hempstead Circuit Court; *George R. Haynie,* Judge; affirmed.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1. The motion for continuance was properly overruled. Kirby's Digest, § 6173; 100 Ark. 132.

2. The indictment is sufficient. Kirby's Digest, § 2228.

3. The so-called confession was admissible in evidence. 102 Ark. 525; 1 Ruling Case Law, 551; 18 L. R. A. (N. S.) 771, note; 73 Kan. 688; 101 Ga. 9; 29 S. E. 309. The confession was voluntary. 28 Ark. 121; 50 *Id.* 305; 63 *Id.* 527; 74 *Id.* 399.

4. There is no error in the instructions.

HART, J. Jasper Tongs, alias J. W. Clark, was convicted of uttering a forged instrument, and his punishment was fixed by the jury at two years in the State penitentiary. The defendant has duly prosecuted an appeal from the judgment of conviction, but he has not filed a brief in the case. The Attorney General, however, has fairly abstracted the testimony and has carefully discussed the grounds for reversal alleged by the defendant in his motion for a new trial.

The first ground of the defendant's motion for a new trial is that the testimony is not sufficient to warrant the verdict. The check charged to have been forged is as follows:

"Hope, Arkansas, 1-3-1917.
"No. ............... Citizens National Bank, 81-110.
"Pay to the order of J. W. Clark $60.00, sixty dollars.
"T. J. Smith."
(Endorsed on back, "J. W. Clark.")

The bookkeeper of the Citizens National Bank, a corporation, testified that when the check was first presented, it purported to have been signed by J. T. Smith instead

of T. J. Smith, and that he would not pay it that way and that the defendant told him the check had been signed by T. J. Smith; that he had been working for T. J. Smith and had sold him a horse and that the check had been given him in payment therefor; that he was on his way to Texas, and for that reason wanted to cash the check at once; that he went out and came back with the check changed so as to show that it was signed by T. J. Smith; that T. J. Smith was about sixty years of age and had an account with the bank; that his son, Joe Smith, had no account with the bank; that there had been some trouble about Joe Smith signing T. J. Smith's name to checks and presenting them to the bank for payment; that the bank had been notified by T. J. Smith not to pay any more checks where his son Joe had signed his name to them; that he would not have cashed the check in question unless he had thought it had been signed by T. J. Smith.

(1)    T. J. Smith testified that he did not sign the check in question and that the defendant had not sold him a horse. It was also shown in evidence that the signature to the check resembled that of T. J. Smith. A written confession signed by the defendant and dated "Hope, Arkansas, March 12, 1917," was read in evidence to the jury. The confession detailed the wanderings of Joe Smith and the defendant from the time they escaped from jail in the State of Oklahoma until they came to the residence of T. J. Smith in Hempstead County, Arkansas. In it the defendant specifically admitted that he knew Joe Smith had signed T. J. Smith's name to the check and that he, after endorsing the check, presented it to the bank at Hope in Hempstead County, Arkansas, for payment; that the cashier stated that the initials of T. J. Smith as they appeared on the check had been reversed and asked the defendant if T. J. Smith had signed the check; that the defendant was then requested to get T. J. Smith to sign the check with his initials in their proper order; that the defendant went out for that purpose and later on in the day presented the check purported to have been signed by T. J. Smith and the bank then cashed it.

The defendant denied that he knew that Joe Smith had forged T. J. Smith's name to the check. He testified that Joe Smith had given him the check in payment of a debt he owed him and that he thought the signature to it was genuine.

It will be readily apparent from the above statement of facts that the testimony was sufficient to warrant the verdict.

Another ground for defendant's motion for a new trial was that the confession was improperly read to the jury. The defendant testified that he was arrested at his home in Texas, and that he did not make the statements contained in the confession as read to the jury. He stated that when he was arrested he was told that if he would sign the written statement that he would be released and that he signed the statement because he thought he was going to be released that night; that a portion of the statement is true and that some of it he did not state at all. On the other hand, the mayor of Hope stated that after the defendant was arrested he was brought to his office and that the confession was written out there by the detective who had him under arrest; that the confession was voluntary and freely made; that no hope of reward or promise of immunity was made to the defendant.

(2) It is true that when improper influences have been used to obtain a confession from a defendant, the presumption arises that a subsequent confession of the same crime flows from that influence. It is equally well settled, however, that such presumption may be overcome by positive evidence that the subsequent confession was given free from undue influence. *Turner* v. *State,* 109 Ark. 332, and *Smith* v. *State,* 74 Ark. 397.

(3) From the testimony of the mayor of the city of Hope the court might have found that the confession was made in the mayor's office and was freely and voluntarily made. In determining whether a confession was voluntarily made, the court must look to the whole situation and surroundings of the accused and its finding that the confession was free from taint of official inducement will

be upheld where there is evidence to support it. *Dewein* v. *State*, 114 Ark. 472, and *Greenwood* v. *State*, 107 Ark. 568.

(4) Another ground of defendant's motion for a new trial was that the circuit court erred in overruling his motion for a continuance. The defendant and Joe Smith were confined in jail in the State of Oklahoma. They escaped therefrom and finally went to the home of Joe Smith's father in Hempstead County, Arkansas, where the forgery charged in the indictment is alleged to have been committed. It was the theory of the defendant that the check in question was given him by Joe Smith in payment of his services in helping to get Smith to his home in Hempstead County, Arkansas. He stated in his motion for a continuance that he could prove this fact by W. H. Tongs and that he is informed and believes that W. H. Tongs is in Little River County, Arkansas; that a subpoena for him was issued and sent to the sheriff of Little River County, Arkansas, on the 7th day of April, 1917; that the subpoena has not been returned and that the defendant does not know whether or not it has been served. The record shows that the defendant was brought back to Hope on March 12, 1917, charged with the commission of the forgery and that an indictment was returned against him on the 5th day of April, 1917. In his motion he states that the matter to be proved by W. H. Tongs was a conversation between the defendant and Joe Smith which occurred at W. H. Tongs' residence in Little River County, Arkansas. It will be observed that the defendant did not attempt in any way to notify the sheriff in what part of the county W. H. Tongs lived, but relied wholly upon the issuance of a subpoena for him. He knew that his case had been set for trial for the 12th day of April, 1917, and that it was necessary that the subpoena should be served at an early date. Hence we do not think that the defendant used due diligence, and it can not be said that the court abused its discretion in refusing a continuance to procure the attendance of W. H. Tongs.

In his motion for a continuance the defendant also states that he has five witnesses who live in Bowie County, Texas, four of whom are character witnesses, and one who would testify that the detective who arrested the defendant held out inducements to him in order to get him to confess the alleged forgery. The defendant does not even set out the names of these witnesses, and we do not think the court erred in refusing to continue the case to allow the defendant to procure their voluntary attendance or to take their depositions.

(5) Another ground of the defendant's motion for a new trial is that the court erred in refusing an instruction asked by him on the subject of reasonable doubt. We do not deem it necessary to set out the instruction, for if it can be said that the instruction is good in form, other instructions on the same subject were given both for the State and the defendant. They fully cover the subject, and we have repeatedly held that the court is not required to multiply instructions on the same point.

(6) Again in his motion for a new trial the defendant alleges that the court erred in refusing to instruct the jury that if it should find from the evidence that prior to the giving of the check in question the defendant had received checks on the Citizens National Bank from Joe Smith signed T. J. Smith, and that said checks were honored by the bank and paid by T. J. Smith and that T. J. Smith in paying the checks had acted in a way to lead the defendant to believe that Joe Smith had authority to sign his name to the checks, that it should find the defendant not guilty. On the part of the State it was shown that T. J. Smith had paid checks to which his name had been signed by his son, Joe Smith, but he had directed the bank not to pay any more of them. According to the testimony of the defendant the bank had cashed two or three checks where T. J. Smith's name had been signed by Joe Smith. This fact, however, would not warrant the jury in returning a verdict of not guilty. The fact that T. J. Smith had in a few instances paid checks where his son had wrongfully signed his name thereto, would not warrant

the jury in finding that he meant thereby to give his son such authority in the future. He might have forgiven his son and paid those checks but this was not testimony from which a jury would be warranted in finding that he intended to give his son authority to sign his name to checks in the future.

It follows that the judgment must be affirmed.