UNITED WALNUT COMPANY *v.* COURTNEY.

Opinion delivered July 11, 1910.

STATUTE OF FRAUDS—PROMISE TO PAY ANOTHER'S DEBT.—Where an oral promise is made to pay the debt of another out of property placed in the hands of the promisor for that purpose, it is an original promise, and not governed by the statute.

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; affirmed.

STATEMENT BY THE COURT.

The plaintiff (appellee) sued the defendant (appellant), alleging that in 1906 he sold a certain lumber business, saw mill, lumber, timber and logs, at Quinton, Oklahoma (then Indian Territory), to William Knowlton, who agreed to pay therefor the sum of $1,030, evidenced by note and contract; that immediately after said transaction plaintiff entered into an agreement with the United Walnut Company (defendant), whereby the note and contract were made payable *to* defendant, and de-

fendant thereupon paid plaintiff the sum of $500 upon said note and contract, and agreed to pay plaintiff the balance of $530; that it was agreed between this plaintiff and this defendant that the said debt owed by Knowlton to this plaintiff, which was evidenced by contract and note made payable to defendant, should be paid by shipments of lumber from Knowlton to United Walnut Company, and that after the first car was shipped all other shipments should be applied by the defendant upon the indebtedness due plaintiff, at the following prices (here the prices are set out). It was agreed between this plaintiff and the defendant that as fast as said shipments were made they should be applied to this $1,030 indebtedness, and upon no other indebtedness, until said amount was paid in full. That subsequent to that time William Knowlton in compliance with his contract shipped to this defendant lumber at the above named prices to an amount largely in excess of $1,030, in excess of that amount. That this defendant has retained the proceeds of said lumber, and has refused to pay the $530 now due this plaintiff, and still so refuses. That demand has been made upon this defendant for payment of said sum, and that defendant has wholly failed to pay. Judgment was prayed in the sum of $530.

The defendant in its answer denied all the material allegations of the complaint, and then set up the following: "that no note or memorandum in writing signed by them, or by any one for them properly authorized, was ever made, binding them to pay this plaintiff the debt which he alleges the said William Knowlton owed him, nor is there any note or memorandum in writing signed by them, or by any one for them properly authorized, binding them to plaintiff in the contract he has alleged in his complaint. Wherefore these defendants plead and rely upon the statute of frauds of the State of Arkansas in such cases made and provided."

"Further answering, these defendants say that on November 30, 1906, at the request of William Knowlton and the plaintiff Courtney, they advanced the sum of $500, which at his request was paid to the plaintiff Courtney; the said advance being made upon a lot of lumber then stacked upon the mill yard of Knowlton near Quinton, Oklahoma; that at time said money was advanced defendants agreed with said plaintiff that they would

retain for him whatever sum said lumber was worth over and above the said $500 advanced, and the necessary expense of marketing same. That when said lumber was brought into defendants' yard at Fort Smith, Arkansas, after paying the charges of hauling and loading same and the freight from Quinton to Fort Smith, defendants got only $469.97 out of it. That at the time defendants advanced the $500 aforesaid upon said lumber, at the request as above alleged of the said Knowlton and the plaintiff Courtrey, the said Courtney promised these defendants to repay the said loan to them if they did not get it out of said lumber. Wherefore defendants ask judgment against Courtney for $30.00."

There was testimony on behalf of appellee tending to prove that it entered upon a contract with appellant as alleged in his complaint and tending to establish appellee's claim. There was evidence on behalf of appellant tending to prove that the only contract it had with appellee was that set up in its answer. There was evidence on behalf of appellant also tending to prove that Knowlton was indebted to appellant, after having given him credit for all the lumber he had shipped to appellant, in the sum of $688.75.

The court gave instructions on its own motion submitting to the jury to determine whether or not the contract existed between appellee and appellant as contended by appellee, or whether the contract between them was as contended by appellant. Appellant duly excepted to the ruling of the court in giving these instructions.

The court at the request of appellant gave the following:

"No. 1. If you find from the evidence that the contract between plaintiff and defendant was that plaintiff borrowed of defendant five hundred dollars and secured same by an agreement to ship him a certain lot of lumber in stacks at his mill near Quinton, Oklahoma, and further agreed that if defendant did not get the five hundred dollars out of said lumber he would repay the same; and you further find that it was also agreed as a part of the same transaction that if, when said lumber was delivered to defendant and it brought more at the prices agreed upon than the five hundred dollars so advanced, said excess over five hundred dollars should be paid to the plaintiff; and you further find that when said lumber was delivered to defendants

it did not bring at the prices agreed upon a sum in excess of five hundred dollars, your verdict must be for the defendant."

The court refused the following prayers of appellant:

2. If you find from the evidence that defendant advanced the sum of five hundred dollars to Wm. Knowlton, and paid the same to Courtney, the plaintiff, upon an indebtedness of said Knowlton to Courtney, and you further find that said money was advanced upon certain lumber stacked at Knowlton's mill near Quinton, Oklahoma, and that defendants advanced said money upon said lumber at the request of said Courtney, and you further find that when said lumber was shipped it did not produce enough money to pay said advance of five hundred dollars, your verdict must be for the defendants.

"3. The plaintiff alleges that the defendants owe him five hundred and thirty dollars, which he says it agreed to pay him upon an indebtedness that one Wm. Knowlton owed him. The defendants deny that they promised to pay plaintiff the sum of five hundred dollars that Wm. Knowlton owed him, and plead that there is no promise in writing made by it to pay said debt. Now, you are instructed upon this point that defendants cannot be held liable for the debt of Knowlton to plaintiff, even if you find they did promise to pay the debt, unless you further find that said promise was made in writing and signed by defendants, or by some one for them having authority to sign their name."

Appellant duly excepted to the ruling of the court in refusing the above prayers.

There was a verdict in favor of appellee for $530. Judgment was entered according to the verdict, and appellant duly prosecutes this appeal.

*Winchester & Martin,* for appellant.

Every collateral undertaking or promise to answer for the debt, default, or miscarriage of another, is within the statute of frauds, and void if not in writing. 12 Ark. 174; 31 Ark. 613; 21 N. Y. 412; 31 Am. Rep. 476; 50 Am. Rep. 693.

*Hill, Brizzolara & Fitzhugh,* for appellee.

When, in consideration of a promise to pay the debt of another, the defendant receives property and realizes the proceeds, the promise is not within the statute of frauds, and plaintiff

may recover. 37 Am. Rep. 612; 4 Cow. 432; 31 Ark. 613; 45 Ark. 67; 75 N. Y. 445; 98 N. Y. 206.

WOOD, J., (after stating the facts). There was ample evidence to sustain the verdict that appellant had entered into a contract with appellee as alleged in the complaint. Appellant contends that there was no evidence to support the verdict as to the amount due appellee, basing its contention on the ground that, according to the testimony of appellant's bookkeeper and a statement prepared by him from tally sheets, books and papers of appellant, Knowlton was indebted to appellant after charging him with the sums paid him on lumber and giving him credit for the full purchase price of the lumber in the sum of $688.75. But the testimony of the bookkeeper himself shows that several errors were made in entries on the books. The jury were warranted in not treating the statement prepared by appellant's bookkeeper from the books and papers of appellant showing Knowlton was indebted to appellant in the sum of $688.75 as conclusive evidence of the fact. On the other hand, there is testimony in the record tending to prove that appellant received of Knowlton under the contract between appellant and appellee 18 cars of lumber. The first two cars contained 31,870 feet, which netted appellee, and for which he received credit, $469.97. This left sixteen cars to be accounted for.

There is some dispute in the evidence as to whether appellant received 17 or 18 cars from Knowlton. But, even if only seventeen cars were received by appellant, the testimony shows that, after deducting the credit for the two cars which appellee received, there remained 173,338 feet. The average price of the lumber according to prices to be paid for the different grades would be over $25 per thousand. At $25 per thousand the total amount for the lumber would be $4,333.45. There was evidence tending to prove, and the jury might have found, that appellant advanced to Knowlton on the above lumber the sum of $17 per thousand. This would have left ample margin for the payment of the balance due on the note of $1,030, which, under the contract between appellant and appellee, was to be paid to appellee until the note was paid. There was testimony on behalf of appellant tending to prove that it had paid Knowlton, not only the $17 per thousand advance, but the full purchase price for the lumber. But, on the other hand, there was testimony

on behalf of appellee tending to prove that the advance of $17 per thousand was all that Knowlton received, that the payments that were made to him were part of this advancement at $17 per thousand. After considering all the testimony in the record, we can not say that the evidence conclusively proves that appellant was not indebted to appellee in the amount of the verdict. Under all the evidence in the record, it was a question for the jury.

We have noted carefully the criticism of appellant upon the instructions given by the court on its own motion. We find no reversible error in these instructions. They fully and fairly submitted the issues raised by the pleadings, and we think correctly presented the respective contentions which the evidence tended to establish. The legal principles involved we do not deem of sufficient general importance to warrant setting out and discussing the instructions in detail. The instructions in fact did not announce any principle of law, but were simply a submission of the respective contentions of the parties on the evidence adduced by them, leaving the jury to determine which was correct.

The court did not err in refusing appellant's prayer number 2, for this was fully covered by prayer number 1 of appellant, which the court granted.

There was error in refusing appellant's prayer number 3. Conceding, as we must, since the jury has so found, that there was such a contract between appellant and appellee as set up in the complaint, such contract, as we construe it, was in no sense collateral, but an original undertaking upon the part of appellant with appellee. The contract was based upon a sufficient, indeed a valuable, consideration, for appellee was once the owner of the mill which he had then sold to Knowlton. Appellant wanted the lumber product of that mill, and agreed with appellee that, if the lumber from that mill was shipped to it, it would see that the purchase price of the lumber was paid to appellee until the note which was given by Knowlton to pay for the mill was paid. Appellant did not own the mill, but it agreed that the note, representing the purchase price of the mill which was due to appellee, should be given to it. Appellant took the note, and received the shipments of lumber under the express contract that the purchase price for the lumber should

be applied to the payment of the note. This was the contract from appellee's viewpoint. The lumber product of the mill was thus placed in the hands of appellant by appellees to be devoted to the payment of the note, the amount of which was due to appellee. Appellee perfected the arrangement by which this was done. Appellant got the benefit of it. The facts bring the case within the principle stated in *Mason v. Wilson,* 37 Am. Rep. 612, as follows: "When, in consideration of a promise to pay the debt of another, the defendant receives property and realizes the proceeds, the promise is not within the mischief provided against, and the plaintiff may recover on the promise or under an action for money had and received." Smith on Law of Fraud, § 318; Browne on Stat. of Frauds, § 169; also § 187; *Farley v. Cleveland,* 4 Cowen, 432, and cases reviewed therein; 29 Am. & Eng. Ency. L., (2 ed.) 917. See also *Hughes v. Lawson,* 31 Ark. 613, *Chapline v. Atkinson,* 45 Ark. 67, where the principle is not expressly stated, but recognized.

The statute of frauds has no place in the case. The judgment is correct.

Affirmed.