## LILLY v. BARRON.

### Opinion delivered June 14, 1920.

1. APPEAL AND ERROR—FINDING WITHOUT JUDGMENT—TIME FOR APPEAL.—Where the court made a finding that plaintiff was entitled to a judgment, but did not enter judgment thereon until a later date, the time for taking an appeal runs from the date of entry of judgment.

2. BANKRUPTCY—PROVABLE CLAIM.—Where a vendor of land required an assignee of the purchaser to execute a second note for the purchase money, claiming that the original note had been lost, and subsequently transferred such original note to an innocent purchaser, the assignee's claim against the vendor for reimbursement was a provable debt and not a contingent claim, and was released by vendor's discharge in bankruptcy.

3. FRAUD—ACTIONABLE REPRESENTATIONS.—As a general rule, actionable representations must be relative to existing facts.

Appeal from Mississippi Chancery Court, Chickasawba District; *Archer Wheatley*, Chancellor; reversed.

STATEMENT OF FACTS.

On the first day of August, 1916, Mrs. S. B. Driver sued C. B. Rodgers and others to recover judgment against them for the sum of $1,650 and to foreclose a vendor's lien on certain property which had been sold to the defendants by O. R. Lilly. She alleged that the $1,650 was a balance of the purchase price of said property, and that the parties had given O. R. Lilly a note for $1,650 and that Lilly had duly assigned the note to her.

J. W. Barron was allowed to become a party defendant and filed his answer to the action and also a cross-complaint against O. R. Lilly. In his cross-complaint Barron alleged that he had paid Lilly the amount of the note sued for, and that Lilly had transferred it to the plaintiff for the purpose of defrauding him out of the amount so paid. The facts are as follows:

J. W. Barron and O. R. Lilly originally purchased a tract of land and platted the same as the Barron and Lilly Addition to the city of Blytheville, Ark. Later Lilly sold his undivided one-half interest in the addition to C. B. Rodgers, and Rodgers in turn sold it to J. W.

Barron. Barron paid Rodgers $1,600 for his half interest in the lots, and as part payment he assumed the balance of the purchase price of the lots. Before Barron purchased the lots from Rodgers, Lilly advised him that Rodgers had made payments upon the note until there was a balance due on it of $935. This was about March 6, 1911; and Lilly executed a deed releasing his lien upon the lots, and Barron executed to Lilly a note for $1,600. Lilly was to surrender the old note, but was not able to find it. In a short time afterward, Barron was in Lilly's office again and asked him about the old note, and Lilly said that he could not find it. Barron then asked him if he had put the note up with anyone as collateral, and Lilly said that he had not. Lilly never delivered the note to Barron, and it is the note here sued on. At the time Lilly told Barron that he had credited the note with the payment Rodgers had made and that this left a balance of $935 due on it. Barron executed the new note for $1,600 to Lilly in order to get Lilly to execute a deed of release to the lots.

According to the testimony of O. R. Lilly, he had a settlement with J. W. Barron in 1914. Barron went to Lilly's office with a lot of notes that they jointly owned. The notes amounted approximately to $10,000. Nearly all of them were worthless, but Barron thought that he could collect some of them, and Lilly transferred his interest to Barron to indemnify him against loss on the transaction involved in this lawsuit. O. R. Lilly was duly adjudged a bankrupt on the 16th day of January, 1916, and was ordered to be discharged from all debts and claims which are made payable by the bankruptcy acts against his estate. The claim of Barron involved in this suit was not proved against his estate.

The cause was heard on the 4th day of September, 1918, and a decree in favor of the plaintiff was entered of record on that day. The court found that on the 6th day of March, 1911, O. R. Lilly assigned the note for $1,650 sued on to the plaintiff, and that no part of the principal or interest on the same has been paid, and that

there is now due on said note the sum of $2,666.72, which is declared to be a lien on the lots involved.

The court further found in favor of Barron on the cross-complaint, and "that the said Lilly was guilty of specific fraud practiced upon the said Rodgers and Barron and that Lilly is primarily liable to the said Rodgers and Barron and that if the said Barron and Rodgers pay the amount due the plaintiff as recited above, then, by virtue of the said payment, the said Rodgers and Barron, or either of them making said payment, shall be entitled to judgment for said amount, and the costs thereof, against the said Lilly."

It was therefore by the court decreed that if the sum adjudged to be due plaintiff was not paid within thirty days, the vendor's lien should be foreclosed and that the lots be sold for the payment thereof.

On September 22, 1919, J. W. Barron filed his motion in the cause, alleging that he had paid the amount of the judgment, towit: $2,757.42, and asked that he have summary judgment against O. R. Lilly for that sum. Lilly resisted the motion, and the court rendered a decree in favor of Barron against Lilly for said amount. The case is here on appeal.

O. R. Lilly having since died, the case has been revived in the name of his administratrix.

*J. T. Coston*, for appellant.

1. Barron's cause of action was barred by limitation in the cause, alleging that he had paid the amount of new note *eo instanti*. If Lilly induced him by false representations to execute a new note, he had his choice of remedies, either to cancel the new note, or an action of damages against Lilly. An appropriate proceeding would have been an action to rescind and cancel the new note with an alternative prayer for damages in case the note had passed into the hands of an innocent purchaser. 57 S. W. 1106; 77 *Id.* 199.

Barron did not have to wait until he was compelled to pay the original note or until the new note became

due. He could commence action at once. 10 Ind. 431; 45 N. W. 338.

Barron's cause of action accrued instantly upon the execution of the new note by him to Lilly, May 8, 1911. It was payable two years after date and Barron's action against Lilly was commenced six years after the new note was executed and was barred. 64 Ark. 165; 60 S. W. 231. The right of action on the new note was barred because Barron's action against Lilly is based solely upon the fact that he was *damaged* by the fraud of Lilly. No matter how fraudulent the representations of Lilly to Barron were Barron can not recover *if he has not been damaged.* Fraud which does not result in injury does not give rise to a right of recovery. Barron has not been damaged, as he never paid the new note, and it is barred by limitation. Barron's damage by the socalled fraud of Lilly is measured by the amount he has paid on the new note, and *that is nothing.* The claim of the Citizens Bank against Barron is also extinguished (even if he were solvent). His claim against Lilly is analogous to the law of subrogation. If the bank waived or lost its right to recover of Barron, he thereby lost his right to recover of Lilly. 112 S. W. 382. Barron was never entitled to judgment against Lilly for inducing him to sign the $1,600 note. If he had sued Lilly before the action was barred, Lilly would have shown that he was insolvent, and that his note was worthless, and that he had not been damaged in the least. 46 Ala. 497; 16 Iowa 120-1. Insolvency of the maker of a note is a good defense, and insolvency and the statute of limitation make a complete defense. Barron is insolvent; he never paid the note, and it is barred, and he is not entitled to recover. 4 Keys 226.

2. Lilly was discharged in bankruptcy, and Barron's claim was a provable one in bankruptcy. 236 U. S. 556-7. Lilly's discharge was a valid bar to the action. 195 U. S. 194. Lilly did not *obtain* any property from Bar-

ron by false pretenses or false representations. 164 Fed. 262; 56 Atl. 1089.

3. Barron and Lilly had a settlement in 1914 and Barron agreed to release Lilly from all liability on the Rodgers note.

4. The summary proceedings was illegal; there was no final judgment, only a finding by the court, but no final judgment on the finding. 196 U. S. 813. If Barron's right of action did not accrue until after he paid the decree, then it was prematurely brought. 21 Ark. 190. Lilly was not required to appear and answer Barron's "notice of intention." A summons was necessary. The relation of principal and surety can not arise out of a tort. It can be created only by agreement. 141 S. W. 760; 75 Atl. 1030; 53 S. E. 431. Lilly was not liable as a surety but as a tort feasor. The summary proceeding fails. 155 S. W. 497.

*Buck & Lasley*, for appellee.

1. The suit was not barred. The statute does not begin to run in cases of fraud until the fraud is discovered. The chancellor found that the suit was not barred by the three years' statute, and his finding is sustained by the proof. Barron was damaged by reason of the fraud of Lilly.

2. Lilly's discharge in bankruptcy was no bar to a recovery by Barron. 236 U. S. 556 is not applicable, as the claim was a contingent one and the contingency was known at the time of Lilly's discharge. Barron knew nothing of the fraud and could file no claim. Evidence of what the schedule contains must be given by the records themselves and not by verbal testimony. 148 Ill. App. 295. The burden was on Lilly to show that this particular debt was scheduled, but there is nothing in the schedule or record to show that Barron's name was included in the schedule.

3. The original judgment on September 4, 1918, fixed Lilly's liability and was a final judgment, and there

was no appeal, and it is *res judicata*. The decree is in accordance with law and is sustained by a clear preponderance of the testimony.

HART, J. (after stating the facts). It is claimed that appellant is barred of relief because no appeal was taken from the decree rendered on the 4th day of September, 1918, within the time prescribed by the statute. In that decree the court found that O. R. Lilly was guilty of fraud practiced upon Barron and was primarily liable to Barron, and that if Barron should pay the amount due the plaintiff, towit, $2,666.72, the said Barron should be entitled to judgment for said amount against O. R. Lilly. No judgment for that amount, however, was rendered against Lilly in favor of Barron.

The finding of the court was for the plaintiff, but there was no judgment on the finding. This being true, there was nothing to appeal from. A finding of fact does not constitute a judgment. The judgment of the court must be pronounced in some form. The finding of the court is not final in its character and does not terminate the litigation between the parties. It does not determine the issues in the case. The effective action of a court is by its decree or judgment, and not by its finding. *Reynolds v. Craycraft*, 26 Ark. 468; *State v. Jones*, 25 Ark. 375; *Moss v. Ashbrook*, 15 Ark. 169; *Sennett v. Walker*, 92 Ark. 607; *Chappell v. Chappell*, (Md.) 33 Atl. 650; *Green v. Probate Judge*, 40 Mich. 244; *Baum v. Currituck Shooting Club*, 94 N. C. 217; *Kilmer v. Bradley*, 80 N. Y. 630; and *Judge v. Powers*, Ann. Cas. 1915 B (Iowa) 280.

The case, therefore, remained within the jurisdiction of the chancery court. Subsequently the chancellor, on motion of appellee, rendered a decree in his favor against the appellant. In apt time appellant prosecuted an appeal from that decree. One of the grounds relied upon by counsel for appellant for a reversal of the decree is that Lilly was adjudged a bankrupt and a discharge in bankruptcy granted him in January, 1916, and that appellee Barron failed to prove his claim against Lilly in the bank-

ruptcy proceedings. Barron did not prove his claim in the bankruptcy proceedings. He now contends that his claim was not discharged by the bankruptcy proceedings because it was a contingent one and therefore not provable under the bankrupt act. The claim was not a contingent one. All the facts necessary to fix liability upon Lilly in the matter had already occurred. Rodgers had executed a note to Lilly for $1,650 for the purchase price of certain town lots, and Lilly had a vendor's lien upon the lots. Rodgers sold his interest to Barron, and Barron assumed the purchase price which Rodgers owed to Lilly. It was agreed between Lilly and Barron that the latter should execute his note to the former for $1,600 in lieu of the $1,650 note. The $1,650 note could not be found at the time the transaction occurred, but it was understood that it should be canceled and delivered to Barron. Consequently Lilly's liability to Barron existed at the time the bankruptcy proceedings were had, and the liability of Lilly to Barron was a provable debt under the bankruptcy laws. Remington on Bankruptcy (8 ed.), vol. 1, sec. 641. See also *Williams* v. *United States Fidelity & Guaranty Co.*, 236 U. S. 549.

Again, it is contended that the liability was not a provable claim in the bankruptcy proceedings because of the fraud of Lilly, and that this was not known by Barron at the time of the bankruptcy proceeding. The fraud contended for is that Lilly deposited the $1,650 note as collateral security for a debt of his own, and that he had told Barron that it could not be delivered to him because he had lost or mislaid it. It is true that Barron testified that Lilly told him that the $1,650 note had not been deposited with anyone as collateral security; but it must be remembered that this conversation occurred after the transaction had been completed. At the time of the transaction it does not appear that Lilly represented to Barron that the note had not been deposited by him as collateral security to any of his creditors. Indeed, when Lilly's whole testimony is read and considered together, it is fairly inferable from it that the note was not de-

posited as collateral security until sometime after his transaction with Barron. His testimony in this regard is not disputed by Barron. Indeed, Barron frankly admits that he has not yet suffered any loss by reason of the transaction. In other words, the payment of the balance of the original purchase money note of $1,650 and the accrued interest was made by the various purchasers of the town lots.

As a general rule, in order for false representations to be the basis of fraud, such representations must be relative to existing facts. An exception to the general rule is, that if the promise is accompanied with an intention not to perform it, and is made for the purpose of deceiving the person to whom it was made and inducing him to act in the premises, the same constitutes fraud. No such state of facts exists here however, and the liability of Lilly to Barron does not accrue on account of fraud or false representations, but because Lilly converted the note to his own use at some period of time after the transaction with Barron had been completed. Therefore he should have proved his claim in the bankruptcy court. See *Crawford* v. *Burk,* 195 U. S. 176.

It follows that the decree must be reversed and the cause will be remanded for further proceedings according to the principles of equity and not inconsistent with this opinion.