## PIERCE v. SICARD.

### Opinion delivered March 5, 1928.

1. VENUE—DISCRETION OF COURT.—A trial court has the discretion to refuse a petition for a change of venue where the plaintiff alleges that he could not obtain a fair and impartial trial in the county, but does not allege any fact upon which his opinion was based.

2. JURY—CHALLENGE OF JURORS FOR BIAS.—In an action against a bank and its officers for breach of a contract, it was not error to overrule plaintiff's challenge to certain jurors because they did business with defendant bank.

3. JURY—BURDEN OF PROVING DISQUALIFICATION OF JUROR.—One selected and returned as a juror is presumed competent and qualified to serve, and the burden is on the challenging party to establish a *prima facie* disqualification.

4. JURY—DISCRETION OF JUDGE IN PASSING ON QUALIFICATIONS.—The judge, who presides at the trial and observes the appearance and manner of jurors, must necessarily exercise judicial discretion in passing on their qualification.

5. JURY—EXAMINATION OF JURORS.—In an action against a bank for breach of a contract, it was not an abuse of discretion to refuse to allow jurors to answer whether they did business with the bank,

which would cause them to believe an officer of the bank in preference to a stranger.

6. FRAUD—PROMISES TO ACT.—The general rule is that fraud must relate to a present or pre-existing fact and cannot ordinarily be predicated on promises or statements as to what will be done in the future.

7. FRAUD—FALSE PROMISE.—Though ordinarily a statement on which fraud may be predicated must be of an existing fact, yet, if a promise is accompanied with an intention not to perform it, and is made for the purpose of deceiving the person to whom it is made and induces him to act in the premises, the same constitutes fraud.

8. EVIDENCE—DECLARATIONS OF AGENT.—In an action against a bank for false promises that it would furnish money to another bank to carry on its business, declarations of defendant's assistant cashier that defendant would see such other bank through a certain year are not competent evidence against the defendant, where they were not authorized and did not relate to any act done by the officer in the course of agency.

9. BANKS AND BANKING—EVIDENCE AS TO BANK OFFICER'S LIABILITY.— In an action by numerous plaintiffs against a bank and its officers for false promises to furnish money to another bank to carry on its business, the evidence *held* insufficient to go to the jury on the question of liability of the assistant cashier of the defendant bank as to plaintiffs, to whom no statement had been made by such officer or any one for him relative to the transaction in question.

10. APPEAL AND ERROR—ASSIGNMENT OF ERROR.—No assignment of error may be based on the action of the court in directing a verdict where such action is not one of the grounds for a motion for new trial.

11. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict on conflicting evidence will not be disturbed.

Appeal from Sebastian Circuit Court, Fort Smith District; *J. Sam Wood,* Judge; affirmed.

STATEMENT OF FACTS.

L. A. Pierce and some sixty odd separate plaintiffs instituted an action in the circuit court against the First National Bank of Fort Smith, Arkansas, and A. N. Sicard and Neil Sims, respectively vice president and assistant cashier of said bank, to recover certain sums alleged to have been lost by the plaintiffs on account of the false promises of the defendants that said First National Bank

would furnish money to the Bank of Cameron, Oklahoma, to carry on its business during the year 1922.

R. C. Strozier, cashier of the Bank of Cameron, was the principal witness for the plaintiffs. According to his testimony, he came to Fort Smith in December, 1921, to make arrangements with the First National Bank of that city to furnish the Bank of Cameron, at Cameron, Oklahoma, with money with which to carry on its business during the year 1922. A. N. Sicard, vice president of the First National Bank, had some stock in the Bank of Cameron. One of the directors of the First National Bank asked Strozier if he would turn over his entire note-case if they would furnish him money to operate on in the year 1922. Strozier told him that he would, and they agreed on that. The directors of the First National Bank sent Neil Sims, assistant cashier, to Cameron to get the notes. Sims went with Strozier to Cameron and brought back all the notes the bank had, for the purpose of being used as collateral for money which the First National Bank would furnish to the Bank of Cameron. The notes amounted to something like $33,000. The First National Bank of Fort Smith loaned the Bank of Cameron $10,000 at that time. The First National Bank furnished the Bank of Cameron with $22,000 in the next thirty days. Subsequently the Bank of Cameron secured a loan of $10,000 through the War Finance Corporation, and reduced its loan to the First National Bank to the sum of $12,500. Collateral notes were released by the First National Bank to the Bank of Cameron to enable it to secure said loan. Sims made several trips to Cameron about business relations between the two banks. He represented to some of the depositors that the First National Bank was going to see the Bank of Cameron through during the year 1922. He told Strozier to talk to the depositors and tell them that the First National Bank would see the Bank of Cameron through during the year 1922. Strozier did tell some of the depositors this, as he was directed to do by Sims. Subsequently the First National Bank refused

to make further advances to the Bank of Cameron, and the latter became insolvent.

According to the evidence adduced in favor of the defendants, none of the officers or directors of the First National Bank made any promise to R. C. Strozier or to any other person that the First National Bank of Fort Smith or any of its officers would make loans to the Bank of Cameron to carry it through the year 1922. They only agreed to make a specific loan to the bank, and to make that loan after having received the collateral agreed upon. Sims was sent to Cameron for the purpose of obtaining this collateral, and had no authority whatever to represent to the officers of the Bank of Cameron, or to any one else, that the First National Bank would make loans to the Bank of Cameron and carry it through during the year 1922. Neil Sims and A. N. Sicard were witnesses for the defendant, and each one positively denied having made any such representations to R. C. Strozier or to any depositor of the Bank of Cameron.

There was a directed verdict in favor of the First National Bank and in favor of A. N. Sicard and Neil Sims as to certain of the plaintiffs. As to the remaining plaintiffs, there was a verdict of the jury in favor of the defendants, Neil Sims and A. N. Sicard. From the judgment rendered the plaintiffs have duly prosecuted an appeal to this court.

*A. A. McDonald,* for appellant.

*Daily & Woods,* for appellee.

HART, C. J., (after stating the facts). It is first sought to reverse the judgment because the circuit court erred in refusing to grant the petition of the plaintiffs for a change of venue.

Section 10341 of Crawford & Moses' Digest provides that the venue of civil actions shall not be changed unless the court or judge to whom the application for change of venue is made finds that the same is necessary to obtain a fair and impartial trial of the cause. In construing this statute in *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Reilly,* 110 Ark. 182, 161 S. W. 1052, the court said:

"The statute means, of course, that the court must hear evidence on the subject, and be governed by it in reaching a conclusion on the issue whether or not a fair and impartial trial can be obtained in the county. The court has a certain amount of discretion in weighing the evidence, but cannot arbitrarily refuse to grant a change of venue when the evidence establishes the fact that a fair trial cannot be obtained there."

The allegations of the petition were not of such character as the court was bound to find that the plaintiff could not obtain a fair and impartial trial in the county. The defendants to the action were a bank and two of its officers. The petition for change of venue alleged that, on account of the undue influence of the defendants, the plaintiffs, who were residents of the State of Oklahoma, could not obtain a fair and impartial trial in the Fort Smith District of Sebastian County. The statement of affiants to the petition amounts to no more than an expression of opinion by them. They did not attempt to give any fact upon which their opinion was based. They merely stated their conclusions in the matter, which the court was not required to accept as establishing the facts alleged.

Again, it is sought to reverse the judgment because the court denied the challenge of the plaintiffs to certain jurors. In asking questions touching the qualifications of jurors, it was ascertained that some of the jurors did business with the First National Bank, and counsel for the plaintiffs challenged them for cause on this account. A person selected and returned as a juror is presumed to be competent and qualified to serve, and the burden is on the challenging party to establish a *prima facie* disqualification. *Shaffstall* v. *Downey,* 87 Ark. 5, 112 S. W. 176.

In discussing the subject in *Thompson* v. *Douglass,* 35 W. Va. 337, 13 S. E. 1015, the Supreme Court of Appeals of West Virginia said:

"As Lord Coke said centuries ago may be said now:

'The causes of favor are infinite.' No enumeration was ever attempted of what causes might be alleged as ground of challenges to the favor. It would be impossible to specify all that should be allowed in advance by a statute, for they depend upon each particular case and the circumstances and parties to it.''

This view is in accordance with our holding on the subject. *Rumping* v. *Arkansas National Bank of Hot Springs,* 121 Ark. 202, 180 S. W. 749. The reason is that the judge who presides at a trial, and who observes the appearance and manner of jurors, when upon their *voir dire,* must necessarily exercise a .judicial discretion in passing upon their qualifications. *Lavender* v. *Hudgens,* 32 Ark. 763.

It is next insisted that the court erred in refusing to allow some of the jurors to answer whether or not the fact that they did business with the First National Bank would cause them to believe an officer of the bank in preference to a stranger. The court did not abuse its discretion in sustaining an objection to this question. It was not shown whether or not the jurors were indebted to the bank or whether they were simply depositors. There had been nothing developed in their examination which tended to show that any special relation of friendship or business existed between them and the officers of the bank. Under these circumstances the court was right in refusing to allow the jurors to be examined as to the apparent credence which they would give to the testimony of the officers of the bank, who were defendants in the action, and the plaintiffs, who lived only a short distance away, in an adjoining State. 35 C. J. p. 392, paragraph 438 (2) ; *Horst* v. *Silverman,* 20 Wash. 223, 55 P. 52, 72 Am. St. Rep. 98; *Jenkins* v. *State,* 31 Fla. 196, 12 So. 677; *State* v. *McIntosh,* 141 La. 150, 74 So. 886; and *Commonwealth* v. *Porter,* 4 Gray (Mass.) 423.

This brings us to a consideration of the merits of the issues raised by the appeal. It is conceded that the general rule in nearly all States is that fraud must relate to a present or pre-existing fact, and cannot ordi-

narily be predicated on promises or statements as to what will be done in the future. The reason is that representations and promises as to future conduct are merely statements of opinion as to what the promisor intends to do, on which the party to whom they are made has no legal right to rely. This is the general rule laid down by this court in *Lawrence* v. *Mahoney,* 145 Ark. 310, 225 S. W. 340, and our earlier cases on the subject.

It is true that in *Lilly* v. *Barron,* 144 Ark. 422, 222 S. W. 712, the court referred to the exception to the general rule that, if the promise is accompanied with an intention not to perform it, and is made for the purpose of deceiving the person to whom it was made, and induces him to act in the premises, the same constitutes fraud. It will be observed, however, that the court said that no state of facts was presented in that case which would bring the case within the exception to the general rule, and there is nothing in the opinion to indicate that the court meant to recognize the exception to the general rule as the law in this State. In a case note to 51 A. L. R., p. 63, it is said that, according to the weight of authority, if the person making the promise or statement as to a future event is guilty of an actual fraudulent intent, and makes the promise or misrepresentation with the intention of deceiving and defrauding the other party, and accomplishes this result, to the latter's injury, fraud may, under many circumstances, be predicated thereon, notwithstanding the future nature of the representations. It is further stated that the weight of authority holds that fraud may be predicated on promises made with an intention not to perform the same, or, as the rule is frequently expressed, on promises made without an intention of performance. In such cases it is said that the gist of the fraud is not the breach of the agreement to perform but the fraudulent intention of the promisor and the false representation of an existing intention to perform, when such intent did not in fact exist. Among the cases in support of the rule we cite the following from the Supreme Court of Oklahoma: *Blackburn* v. *Morrison,*

29 Okla. 510, 118 Pac. 402, Ann. Cas. 1913A 523; *McLean v. Southwestern Casualty Ins. Co.,* 61 Okla. 79, 159 Pac. 660; *Rogers* v. *Harris,* 76 Okla. 215, 184 Pac. 459; and *Haggerty* v. *Key,* 100 Okla. 238, 229 Pac. 548.

In *McLean* v. *Southwestern Casualty Ins. Co.,* 61 Okla. 79, 159 P. 660, it was said that there is a wide distinction between the nonperformance of a promise and a promise made *mala fide* and without any intention at the time of making it to perform it; and, while ordinarily a statement upon which fraud may be predicated must be of an existing fact, yet if a promise is made to be performed in the future, as an inducement to obtain a contract, if the intention not to perform the promise be shown to have existed at the time the promise was made, such false promise constitutes cognizable fraud.

The circuit court adopted the view of the law laid down by the Supreme Court of Oklahoma in the cases above cited in trying the case at bar, and, inasmuch as the result of our views affirms the judgment of the circuit court, it will not be necessary for us to determine whether, in cases where the alleged fraudulent promises were made in another State and suit based thereon is brought in this State, the courts of this State will recognize the law on the subject as laid down by the Supreme Court of the State where it is alleged that the false promises were made.

The circuit court correctly directed a verdict in favor of the First National Bank. There is no testimony in the record tending to show that it authorized its assistant cashier to go to Cameron, Oklahoma, and make any representations to the Bank of Cameron to the effect that it would furnish the Bank of Cameron with money to operate on during the year 1922. While there was proof that Neil Sims, assistant cashier of the First National Bank, went to Cameron and told some of the depositors of the Bank of Cameron that the First National Bank would see the Bank of Cameron through during the year 1922, such declarations of the assistant cashier are not competent evidence against the bank,

because they were not authorized by the bank, and did not relate to any act done by him in the course of his agency. He went to Cameron for the purpose of getting collateral notes for a specific loan which the First National Bank was making to the Bank of Cameron. *Taylor* v. *Commercial Bank,* 174 N. Y. 181, 66 N. E. 726, 62 L. R. A. 783, 95 Am. St. Rep. 564. Hence the undisputed evidence shows that there was no liability to the plaintiffs by the First National Bank, and the court properly directed a verdict in its favor.

The court also directed a verdict in favor of Neil Sims against Ophelia Barton and twenty-four other plaintiffs, because there was no testimony tending to prove any statements made by Neil Sims or any one for him to said plaintiffs relative to the transaction in question. The record does not show that Neil Sims made any statement to these plaintiffs whatever, nor does it show that any one else for him made any statement to them relative to the matter. Therefore we hold that the court was right in directing a verdict in his favor as to these plaintiffs. Moreover, the action of the court in directing a verdict in favor of Neil Sims as to these plaintiffs was not one of the grounds for the motion for a new trial, and, under our settled rules of practice, no assignment of error could be based upon the action of the court. The reason is that it is the duty of the complaining party to call the court's attention to the particular error and give it an opportunity to correct the same. *Patterson* v. *Risher,* 143 Ark. 376, 221 S. W. 468, and *Oliphant* v. *Hamm,* 167 Ark. 167, 267 S. W. 563.

At the conclusion of the evidence the court directed a verdict in favor of the defendant A. N. Sicard against W. R. Brown and twelve other plaintiffs. The ruling of the court was not made one of the grounds for a motion for a new trial, and, as just stated, under our settled rules of practice the action of the court cannot be reviewed.

We have carefully examined the instructions given at the request of the plaintiffs, as well as those given at

the request of the defendants, and are of the opinion that they fully and fairly submitted the question at issue, under the law as laid down by the Supreme Court of Oklahoma in the cases above cited. According to the evidence of all the officers of the First National Bank who were present when they had the negotiations with the cashier of the Bank of Cameron, no promise whatever was made by the First National Bank or any of its officers or directors that it would see the Bank of Cameron through during the year 1922. According to the testimony of R. C. Strozier, cashier of the Bank of Cameron, such promise was made. The disputed question of fact whether or not the jury should find that such promise was made and whether or not there was an intention not to perform the promise as shown to have existed at the time it was made, was submitted to the jury under the principles of law above announced, and, under our settled rules of practice, the verdict being in favor of the defendants, it will be allowed to stand.

We find no reversible error in the record, and the judgment will therefore be affirmed.