BANK OF HOXIE v. WOOLLEN.

Opinion delivered May 26, 1930.

*George M. Gibson* and *Chas. D. Frierson,* for appellants.

*Smith & Blackford,* for appellee.

MEHAFFY, J. On June 17, 1929, appellee, M. R. Woollen, began this action in the Lawrence Chancery Court against the Bank of Hoxie, and afterwards filed an amendment to her complaint, making Mrs. A. E. Richardson, as administratrix, a party defendant. She also on the 17th of June, 1929, began suit against the Lawrence County Bank, and Mrs. A. E. Richardson, as administratrix, was afterwards made a party defendant. Appellee on June 17, 1929, filed a suit against the Bank of Portia, and later amended, making Mrs. A. E. Richardson, administratrix, defendant. She alleged that the defendant Bank of Hoxie claimed to hold a note purporting to be executed by her in the approximate sum of $2,200; that, if said bank in fact has such note, it was not signed by her, or by her authority or consent, and that she received no benefit whatever because of the execution of said note, and it was signed without her knowledge or consent; that she is in feeble health, and desires, for the protection of her estate, to have the said bank to exhibit said note for cancellation by order of this court; that the claim of said bank against her for said sum greatly impairs her credit from a financial standpoint. The prayer was that the note be surrendered for cancellation, so far as she is concerned, and that said note and all liability of plaintiff thereunder be declared fraudulent and void and canceled. Mrs. A. E. Richardson, as administratrix of the estate of J. G. Richardson, deceased, was made defendant because J. G. Richardson appears to have signed and indorsed the note in question. The complaints in the other two cases are substantially the same as the complaint in the case against the Bank of Hoxie. Defendants filed answers and cross-complaints, the cases were consolidated, and there was a finding and decree in favor of appellee. This appeal is prosecuted to reverse said decree. The undisputed evidence shows that the appellee, Mrs. M. R. Woollen, did not sign the notes. Appellants state in their brief: ''J. G. Richardson being dead, the appellants are

deprived of any evidence as to whether or not Mrs. Woollen personally signed the three notes in controversy.'' J. G. Richardson was appellee's brother and was one of the directors of the Bank of Hoxie at the time one of the notes was executed. Mrs. Woollen testified that she did not sign the note, and that at the time she testified was the first time she had ever seen the note; that in her judgment the signature of M. R. Woollen to the note was her brother's, (J. G. Richardson's); that he also signed his individual name below hers; that she did not authorize him to sign the note. The first she knew her name appeared on any note to the Bank of Hoxie was when Carroll McCarroll wrote her about it when she was in Tucson; that she did not authorize Mr. Richardson or any other person to sign her name to the note, and did not know any such note existed until Mr. Richardson died. He died December 26, 1928; that her brother had transacted some business for her some years ago, but never without her authority. She did not receive any notice from the bank about the note. Mr. Bassett, who was in the bank a while, testified that Mr. Richardson was president of the Lawrence County Bank from 1915, except one year, and was on the board of directors of the Bank of Portia. Mrs. Woollen testified that her name was on the note to the Bank of Portia in her brother's handwriting, and that his genuine signature was under her name; that she did not authorize him or any one else to sign this note or any other note. The same evidence was introduced by plaintiff as to all the notes. The evidence shows that Richardson took all the notes to the banks, and no one testified that appellee signed any of them. There was some evidence that notices had been sent to appellee, but no witness testifies that she ever received any notice. There was considerable testimony about when the notes were originally given and about renewals, but it is unnecessary to set it out here. Appellee's name was on all the notes. The evidence shows that Richardson always paid the interest,

and that appellee was never called on to pay any interest. Most of the appellants' witnesses testified as to what the record showed as to the notes. Mr. Bassett testified that he at one time showed Mrs. Woollen two notes when she came into the bank to pay a $1,300 note. She did pay this note, but he said he showed her the other one also; that he handed them to her, and she handed them back to him and said she would pay the $1,300 note. He does not think she made any statement about the other note. It was not discussed; did not remember but does not think that he told Mr. McCarroll that he never showed Mrs. Woollen this note nor that he laid it down on the desk when she paid the $1,300 note, and she might have seen it. "As to whether she understood the other note, I do not know. It was not discussed." McCarroll testified that Bassett told him: "As to whether or not she saw the other note I could not swear, and I do not know." Mrs. Woollen testifies that Bassett never showed her the other note.

The only evidence in the record tending to show that Mrs. Woollen authorized Mr. Richardson to sign her name to notes is the testimony of Mr. McCorkle that sometime about 1911 Mr. Richardson introduced Mrs. Woollen to him in the bank, and that Mr. Richardson said to her: "Sissie, it is perfectly all right for me to use your name in the bank here on the paper." Witness adds that he knew they were just laughing and talking in a jovial way, and that was about the sum and substance of it according to his recollection. Witness was then asked if she made any statement relative to it, and he answered: "I have a faint recollection that her reply was that it was perfectly all right for Buddie to use her name in any way he wished." This conversation was in 1911 or 1912. This testimony was denied. We do not think that testimony as to witness' faint recollection of a conversation occurring nearly twenty years ago is sufficient to show authority to sign negotiable instruments.

"Authority to execute, indorse, or transfer negotiable instruments, such as a bill of exchange or promissory note, need not be in writing but may be conferred by parol, although the authority is not to be lightly inferred but must be clearly shown." 2 C. J. 451.

"And the rule as to any agent is that an agent having general authority to manage his principal's business, has, by virtue of his employment, no implied authority to bind his principal by making, accepting or indorsing negotiable paper. Such an authority must be expressly conferred or be necessarily implied from the peculiar circumstances of each particular case. It may undoubtedly be conferred by implication, but it will not be presumed from the mere appointment as general agent." Morris v. Friend, 116 Ark. 424, 173 S. W. 199.

There is no evidence in this case that Mr. Richardson was Mrs. Woollen's general agent, but even if the evidence showed that he was her general agent, this would not authorize him to sign her name to negotiable instruments.

Agency cannot be established by the acts or declarations of the agent. The agent cannot confer authority upon himself or make himself agent merely by saying he is one. American Southern Trust Co. v. McKee, 173 Ark. 147, 293 S. W. 50. The preponderance of the evidence in this case shows that Richardson had no authority to sign Mrs. Woollen's name to the notes in controversy. It is however, earnestly contended that Mrs. Woollen ratified the acts of Mr. Richardson in signing the notes. There is no evidence that Mrs. Woollen ever received any benefit from these transactions, and she was never called on to pay any interest when the notes were renewed. While there is some testimony that appellee saw one of the notes and some witnesses testified to conversations with her about the notes, all this testimony is denied. The evidence is in conflict about these matters. The general rule is that, in order that a ratification of an unauthorized transaction of an agent may

be valid and binding, it is essential that the principal have full knowledge of all the material facts. 2 C. J. 477; *Arkansas Valley Bank* v. *Kelley,* 176 Ark. 387, 3 S. W. (2d) 53, 58 A. L. R. 808; *Haines* v. *Rumph,* 147 Ark. 425, 228 S. W. 46; *DeCamp* v. *Graupner,* 157 Ark. 578, 249 S. W. 6; *Martin* v. *Hickman,* 64 Ark. 217, 41 S. W. 852.

The evidence does not show that appellee had knowledge of the facts, and does not show any ratification. Of course, if appellee had received any benefits from the transactions, a different question would be presented, but there is no evidence that she received anything. There is some conflict in the evidence, but the chancellor's findings are supported by the preponderance of the evidence, and the decree is affirmed.