## THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JOHN FAVORITO, PLAINTIFF IN ERROR.

Argued April 11, 1935—Decided May 17, 1935.

198

─────

For the plaintiff in error, *Walter B. Winne* and *Rex B. Altschuler.*

For the defendant in error, *John J. Breslin, Jr.,* prosecutor of the pleas.

The opinion of the court was delivered by

TRENCHARD, J. John Favorito, the plaintiff in error (hereinafter called the defendant), was convicted in the Bergen County Court of Oyer and Terminer of murder in the first degree without any recommendation of life imprisonment, on an indictment for the murder of Emil Viborny, and sentence of death was imposed.

The defendant brings up the entire record and specifies causes for reversal and also assigns error on exceptions.

The state's proof was to the effect that the defendant, accompanied by Charles Wiese and William Crum, drove to the gasoline station of the decedent. The defendant and Wiese were both armed with revolvers. They both went in the station and Crum remained outside as a lookout. The defendant ordered the decedent to hold up his hands and then robbed him of $4. The decedent resisted and was shot by the defendant and was hit on the head with the butt of the revolver handled by Wiese; and nine days afterward decedent died as a result of the gunshot wound.

It is not contended that the verdict was against the weight of the evidence, and we now examine the points made in the defendant's brief and argued.

The first point is that the procedure in selecting the jury was "illegal."

The sole basis of this objection is that the court allowed

the prosecutor of the pleas to interrogate the persons summoned as jurors under oath, without requiring the interposition of a challenge, upon matters relating to the competency of such persons to serve as jurors.

We think there is no merit in the point.

Chapter 298 of *Pamph. L.* 1931 (*N. J. Stat. Annual* 1931, § 53-83a), reads: "Upon the trial of any indictment for murder every person summoned as a juror may be examined under oath, in open court, before being sworn as such juror, without the interposition of any challenge, upon such matters as shall relate to the competency of such person to serve as a juror in the said trial. Such examination shall be conducted under the supervision and control of the trial court."

It is therefore quite certain that the course pursued by the prosecutor of the pleas was the course authorized by the statute. It was competent for the legislature to so enact. Indeed, the defendant does not argue that the legislature exceeded its powers in that regard.

The defendant's second point is that "there was error in the questions propounded to the jurors [by the prosecutor of the pleas] regarding capital punishment."

The question put to two of the persons summoned as jurors, on their *voir dire,* of which complaint is made, was "have you any religious or conscientious scruples against capital punishment?"

Of course it was competent for the prosecutor of the pleas to ask that question. *State* v. *Juliano,* 103 *N. J. L.* 663.

The answer of the jurors was that they had such conscientious scruples.

But the defendant argues under this head that it was erroneous for the trial judge to sustain a challenge for cause against the jurors who had so answered.

We think that contention has been determined adversely to the defendant by this court in *State* v. *Juliano, supra,* in the comprehensive and well considered opinion of Mr. Justice Lloyd. Therein he points out that chapter 134 of the act of 1919 (page 303) (*Cum. Supp. Comp. Stat.* 1911-1924, *p.* 857, § 52-108) declares that "every person convicted

of murder in the first degree * * * shall suffer death unless the jury shall by their verdict and as a part thereof, upon and after consideration of all the evidence, recommend imprisonment at hard labor for life, in which case this and no greater punishment shall be imposed." Speaking for a unanimous court Mr. Justice Lloyd further said: "It was the privilege of the state to contend before the jury under this statute that upon the evidence the crime was of such atrocity that the jury's verdict should be without recommendation. *It was the right of the state to have jurors who would receive this contention with open mind, and when the jurors, upon their examination, disclosed that this phase of the case could not be so submitted to them they were obviously disqualified to pass upon one of the phases of the evidence as to which they might or might not exercise the clemency contemplated by the statute. If sworn as jurors their scruples would shut out this proof and be in defiance of the law which submitted to them the proper punishment to impose on the defendants based upon the evidence solely.* To hold otherwise might be to, in effect, work the practical abolition of capital punishment in this state; a function and right of the legislature only."

But the defendant argues that the fact that one of the two persons summoned as jurors here in question had conscientious scruples against capital punishment did not justify sustaining a challenge for cause as to that juror because he was not asked whether such scruples would influence him in the discharge of his duties. We think such argument fallacious, and that there was no error in sustaining the challenge. As we have seen, a juror who has such conscientious scruples is clearly incompetent. If accepted as a juror he must either violate his conscience or his oath and ought not to be permitted to serve. *Thompson & M. Jur.,* § 202. It is the object of the law and the duty of the court to see that the prisoner has a fair trial, and at the same time to guard the interest of the public; and to that end the jury impaneled to pass upon the issue between the prisoner and the state should be impartial and competent. If, as here, a juror testi-

fies on his *voir dire* that he has conscientious scruples against capital punishment, it is apparent that he would naturally be influenced thereby no matter how much he is disposed to do his duty (*State* v. *Bowman*, 80 *N. C.* 432) and such a bias renders him incompetent, and a challenge for cause is properly sustained, even though he was not asked and did not say whether his scruples would influence his verdict. *State* v. *David*, 131 *Mo.* 380; *People* v. *Daman*, 13 *Wend.* 351; *Comm.* v. *Lisher*, 17 *Serg. & R.* 155.

The third point is that "the trial court refused to permit counsel on cross-examination to ask Charles Wiese this question: 'And the judge who sentenced you is now your lawyer, is he not?'"

We think there is no merit in this point. Wiese was an accomplice in the homicide in question which occurred in 1934 and testified as witness for the state. He had been convicted in 1930 of burglary and was sentenced by the judge then presiding. That judge's term expired, and when the homicide in question occurred he held no official position in the state. He was assigned by the present judge to represent Wiese in the homicide case. In such circumstances the question "and the judge who sentenced you is now your lawyer, is he not?" was irrelevant and was properly excluded.

The fourth point is that "the trial judge refused to permit the defense to ask Dr. Collins on cross-examination 'He [defendant] is not a normal man for his age in intellect, is he doctor?'"

There is clearly no merit in this point. It is apparent that the question was not proper cross-examination; but apart from that, the exclusion of this question cannot result in reversal, for the record shows that after the question had been overruled the witness was permitted to testify, and did testify fully, in answer to that very question. In such circumstances it is clear that there can be no reversal. *State* v. *Scott*, 104 *N. J. L.* 544.

The fifth point is that "the trial judge erred in permitting the stenographer to read the alleged confession of Favorito to the jury."

We find no merit in this point. The confession now in question was taken down stenographically by the official stenographer, the defendant being questioned by the assistant prosecutor of the pleas in his office. The question whether or not the confession was a voluntary one was the subject of proof taken in the trial court. A voluntary confession by a person accused of crime is one not extorted by any sort of threats or violence, or obtained by any direct or implied promises. The trial judge found from the proofs that the confession in question was a voluntary one, and the proofs amply sustained that finding. Such a finding of fact by the trial court as a necessary preliminary to the admission or rejection of a confession is not reviewable on error, if there be any legal evidence to support it. *State* v. *Compo,* 108 *N. J. L.* 499, where the cases are collected and reviewed.

The sixth point is that "it was error for the trial court to permit the witness LoPresti to relate an alleged confession by the defendant."

We find no error here. This confession was made to a police officer several hours after the confession taken down by the stenographer, hereinbefore referred to, was made and completed. The sole objection urged to the admission of the later confession now in question is that proof of the prior confession precluded the proof of a later confession made several hours afterwards. But that argument is fallacious. The fact that the accused made a confession which was taken down by a stenographer does not render incompetent oral evidence by the state of another confession made at another time. *State* v. *Wells,* 1 *N. J. L.* 424.

The last point made by the defendant is that "it was error for the court to refuse the defendant the right to state to the jury something about his early life and bringing up."

We find no error here justifying a reversal. If it is the contention of the defendant that the judge refused the defendant the right to state anything about his early life and bringing up, the contention is erroneous in point of fact. He was permitted to detail many things, notably his place of birth, his place of residence, that he lived with his parents,

that he attended school until seventeen years of age, that he then obtained employment and where he worked.

The only assignment of error and reason for reversal requiring consideration under this head is that the court on direct examination of the defendant overruled the following question: "And who did you live with in your early life?"

An examination of his prior and subsequent testimony discloses that this question was answered in substance and effect. But apart from that the exclusion of the question was not reversible error, as this court has held in effect in an opinion by Mr. Justice Parker in *State* v. *Barth,* 114 *N. J. L.* 112. There evidence offered by the defendant on trial for murder relating to his "past life and antecedent background" was held properly excluded, the court saying, among other things, "doubtless such matters are considered in sentencing for crimes and in connection with the parole system and the work of the Court of Pardons; but they are not relevant at the trial."

The judgment below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 15.

*For reversal*—None.