NELSON *v.* STATE.

Crim. 3923

Opinion delivered May 20, 1935.

*H. S. Grant* and *C. O. Raley,* for appellant.

*Carl E. Bailey,* Attorney General, *Guy E. Williams* and *Ormand B. Shaw,* Assistants, for appellee.

SMITH, J. This is an appeal from a capital sentence imposed by the Jackson County Circuit Court upon appellant for the murder of one B. F. Mitchell. The testimony shows very conclusively that Mitchell was beaten

to death during the night of May 24, 1934, with a stick or club, and that a large amount of money was stolen from the room in which Mitchell was killed.

Appellant was arrested as a suspect in an adjoining county about three months after the murder had been committed, and there was found upon his person $593 in cash. He and his family had for some time previously been on the relief roll receiving assistance from the Federal and State governments.

After testimony had been offered at the trial from which this appeal comes showing that Mitchell had been robbed and murdered, Mrs. Priest, his daughter, was called as a witness. She testified that an officer of Jackson County, in the jail of which county appellant was then confined, told her that appellant wished to see her and her brother Albert, and that, in response to this message, she and her brother went to the jail and had an interview with appellant in the front room or office of the jail, at which time appellant related to her and her brother the manner in which he had killed and robbed their father. Charlie Hogan, the jailor, was present in this room during the interview. Witness made appellant no promise of any kind, nor did any one else make any promise. No fact or circumstance had then been offered in evidence affecting the competency of this testimony.

A physician was then called, who testified as to his examination of the body of the deceased and the cause of death. After that witness had been examined, Gray Albright, the sheriff of Jackson County, the county in which the homicide had been committed, testified as a witness. He had been called to the scene of the homicide, and described the appearance of the room where the body of the deceased was found, and also the condition of the body. After the arrest appellant was delivered into his custody. Among other money found on appellant's person were six gold certificates of the denomination of twenty dollars each, and a number of national bank notes which had been issued by the First National Bank of Newport, which city is in Jackson County. Witness carried appellant to Little Rock to be there interviewed

by Mr. Pitcock, chief of detectives of that city. After the interview Pitcock stated to witness that appellant had agreed to talk, provided witness would guarantee that appellant "would not get the electric chair." Witness did not give the guarantee, but he did state that he "never heard of a man that would come clean and tell everything that he knew and stand up and help prosecute those that were implicated that ever got the electric chair." Witness gave no other promise of immunity, but when the statement quoted was made appellant related the details of the crime. Witness returned appellant to the Jackson County jail, where, about two weeks later, appellant again related some of the circumstances of the crime, the commission of which he had confessed while in Little Rock.

At the conclusion of the direct examination of this witness a motion was made that the testimony be excluded for the reason that the confession had been made "under threats and coercion on the part of the officers in the city of Little Rock." This motion was not then sustained. Upon the cross-examination the witness related in detail the circumstances under which the confession had been made, and admitted that he had stated to appellant that he would "help make it light on him" (appellant).

At the conclusion of the testimony of this witness, the court excluded the testimony relating to the confessions and instructed the jury in clear and forceful language to disregard it as being incompetent, and also to disregard any subsequent confession made by appellant to the sheriff. Thereupon counsel for defendant moved the court to exclude the testimony of Mrs. Priest as to the confession made in her presence at the jail. In overruling this motion, the court said: "The court is not ruling on anything now except these statements made to the sheriff; that testimony for the present is all withdrawn from you, gentlemen of the jury, about his statements made to the sheriff in Little Rock or anywhere else. You will not consider it as any evidence in this case." The witness then stated: "The sheriff: 'The statement I made about helping him any way I could

was in answer to his question about letting his wife stay over there with him.' '' Whereupon the court restated the ruling and the reason therefor. Exceptions were then saved to the refusal of the court to exclude Mrs. Priest's testimony.

Albert Mitchell, a son of the deceased and a brother of Mrs. Priest, was then called as a witness. He testified that he went to the jail upon the request of appellant, which message was delivered to him by appellant's wife. Objection was made to the testimony of this witness upon the ground that appellant was still laboring under the influences which had induced the confession in Little Rock. Witness stated that he had not sought the interview, and that he went to the jail only because appellant had requested him to come, and that he made appellant no promise of any kind. At the conclusion of the interview, during which the circumstances of the crime were related, appellant stated to witness and to Mrs. Priest that "he felt a whole lot better now, for we didn't hold it against him like he thought we would." A searching cross-examination of the witness failed to shake his statement that witness had not sought the interview.

The first witness called by appellant was Hogan, a deputy sheriff, who is also the county jailer. Hogan testified that, after appellant had returned from Little Rock, Albert Mitchell and Mrs. Priest called at the jail and requested to see appellant. The interview occurred in the office of the jail, which is a large room. Appellant, Mrs. Priest and Mitchell were close together and talked for ten or fifteen minutes. Witness did not listen to the conversation, and did not know what was said.

Appellant testified in his own behalf. He was not asked by either side any question about his trip to Little Rock, nor did he explain the possession of the money found on his person at the time of his arrest except to say that he had been discharged from the army on February 23, 1934. After his discharge he had resided with his father in Poinsett, a county adjoining Jackson. He testified that in the interview with Mrs. Priest and her brother he denied killing their father, but at their request related what he had told the sheriff in Little Rock.

He denied in general terms the truth of the testimony of Mrs. Priest and her brother, but he did not specifically deny that they had called on him in response to his invitation to that effect. He denied killing Mr. Mitchell.

It is earnestly insisted that the admission of the testimony of the sheriff as to the confession made in Little Rock was prejudicial error, which was not and could not have been cured by its subsequent withdrawal and the direction to the jury to disregard it; and it is also insisted that the later confession made to Mrs. Priest and her brother was not shown to have been free from the influence which induced the first confession.

In response to this contention, it may again be said that when Mrs. Priest testified no showing had been made that the confession made to her was not entirely free and voluntary.

The practice in regard to the admission of confession is well settled, and has been frequently followed. If it is contended, when testimony showing a confession is offered in evidence, that the alleged confession was not freely made, the court hears, in the absence of the jury, the circumstances connected with it. If it appears that the confession was obtained through duress or other improper influences, the jury is not permitted to hear the confession related. If it does not so appear, the confession is admitted for the consideration of the jury along with all the other testimony in the case, to be given the weight to which the jury concludes it is entitled to have. If the testimony leaves in doubt the question whether the confession was freely and voluntarily made, that question should be submitted to the jury, with the direction to disregard the testimony as to the confession if the fact be found that it was not free and voluntary.

The rulings and the instructions of the court manifest a familiarity with this practice. The court had not been asked to first hear the testimony as to the admissibility of the confession, but when testimony relating to the confession made in Little Rock was offered, and the fact was made to appear that the confession there made had been induced by promised leniency, the court properly excluded it. This ruling would, no doubt, have been

made as to that testimony had the showing been made in advance of the admission of the confession. We think its exclusion under the circumstances stated cured any prejudicial error. *Corley* v. *State,* 50 Ark. 305, 7 S. W. 255; *Davis* v. *State,* 182 Ark. 123, 30 S. W. (2d) 830.

It is insisted that the admission of the confession to Mrs. Priest and her brother was prejudicial and erroneous, for the reason that it was not shown to have been free from the influence which induced the original confession.

The law of this subject was stated in the case of *Tongs* v. *State,* 130 Ark. 347, 197 S. W. 573, as follows: ''It is true that when improper influences have been used to obtain a confession from a defendant, the presumption arises that a subsequent confession of the same crime flows from that influence. It is equally well settled, however, that such presumption may be overcome by positive evidence that the subsequent confession was given free from undue influence.''

The contention at the trial was not that the second confession flowed from the influences which induced the first; but that it was not made at all—that there was no second confession. The conflicting testimony upon this issue was a question for the jury, which was not only submitted to the jury, but the court also submitted the question whether, if made, the confession had been induced by an improper influence, and to disregard it if it so appeared. In that connection the court charged the jury as follows: ''And in order for a confession to be voluntary you must find that it was made without the hope of reward or fear of punishment. In other words, a voluntary confession means a confession that the defendant makes free from any hope of reward or fear of punishment. It is a confession that the defendant makes because he wants to make it and not because some one else wants him to make it. In other words, gentlemen, it must be made by his own free will and volition without any promise or expectation of reward; it must not be made in fear of any punishment. He must make it voluntarily and of his own accord.''

Whether the second confession was made, and, if so, whether it was, in fact, free and voluntary, is a question which was submitted to the jury, and is concluded by the verdict.

An exception was saved to the giving of instruction numbered 12, which reads as follows: "I further instruct you, that a confession made by a defendant, unless made in open court, will not warrant a conviction unless accompanied with other proof that such offense was committed."

A general—and not a specific—objection was made at the time the instruction was given, and it is now argued that the instruction assumed that appellant made a confession to Mrs. Priest and Mr. Mitchell, her brother, whereas appellant denied that he had made any confession to them. In the absence of a specific objection, the instruction, read in connection with other instructions, could not be given that meaning. The instruction practically copies § 3182, Crawford & Moses' Digest, but does not assume the fact that there was a second confession.

The objection is made that the instruction tells the jury that a conviction could be had upon an extrajudicial confession of the defendant if the confession was accompanied by proof that the offense had been committed. And so it does, but § 3182, Crawford & Moses' Digest, above referred to, so provides. It reads as follows: "A confession of a defendant, unless made in open court, will not warrant a conviction unless accompanied with other proof that such offense was committed."

It is insisted also that there should have been other testimony tending to connect the defendant with the commission of the crime. Such is the requirement of the statute in regard to convictions upon the testimony of accomplices. Section 3181, Crawford & Moses' Digest. But there is no question of accomplices in this case, and the statute requiring corroboration of the testimony of an accomplice which tends to connect the accused with the commission of the crime has no application here.

In the case of *Johnson* v. *State*, 135 Ark. 379, 205 S. W. 646, it was said: "It is true that we have held many times under § 2385 of Kirby's Digest that a con-

fession of a defendant, unless made in open court, will not warrant a conviction unless accompanied with other proof that such offense was committed. The defendant confessed to Alec White that he had shot the prosecuting witness on the night in question. It was proved by the prosecuting witness that some one shot him on that night. Thus it will be seen that the requirements of the statute were fully met by the State in this case."

In that case it was shown only that a man had been shot, and that the accused had confessed that he did the shooting, and this testimony was held sufficient to meet the requirements of the statute quoted.

So, here, the testimony shows without dispute that Mitchell was murdered, and the jury has found, under instructions properly submitting the question, that appellant freely and voluntarily confessed that he had committed the crime. We must therefore hold the testimony legally sufficient to support the verdict.

As no error appears, the judgment must be affirmed, and it is so ordered.