NEEDHAM v. STATE.

4577                                224 S. W. 2d 785

Opinion delivered October 31, 1949.

Rehearing denied December 12, 1949.

*Claude F. Cooper* and *Gene Bradley,* for appellant.

*Ike Murry,* Attorney General and *Jeff Duty,* Assistant Attorney General, for appellee.

GEORGE ROSE SMITH, J. The jury found the appellant guilty of rape and imposed the death penalty. This appeal is from a judgment entered upon the verdict.

The crime occurred several hours after midnight on April 10, 1949. The prosecutrix, an eight-year-old girl, had been put to bed at home. She testified that when she awoke she was in a car with a man. He stopped the car in a deserted street and put her in the back seat. He then removed her panties, opened his trousers and got on top of her. The child did not specifically describe the act of penetration but did say that the man was hurting her and that she was crying and asking to be taken home. Eventually she was put out of the car and told to walk home.

The child's mother, whom she awakened upon her return at five o'clock in the morning, testified that her daughter was covered with blood from her throat down to her toes. A physician who treated the child found the membrane of the vaginal canal so severely torn that three fingers could be inserted, although the opening would normally have been about half the size of a man's little finger. Fifteen stitches were required to close the wound.

The prosecutrix was able to identify the car as an ABC taxicab. Investigation at the cab company's place of business revealed a cab having dark stains on the front and rear seat covers. It was learned that appellant had been assigned to drive the vehicle during the night and that after turning in his cab he had left for Hattiesburg, Mississippi. The authorities there were notified and took appellant into custody at about eight o'clock that night. When arrested he was wearing a pair of trousers having reddish stains around the fly, and in his room at a tourist court was found a pair of shorts similarly stained. Both garments bore the appellant's laundry mark.

Appellant was returned to Blytheville the next day and questioned about the crime by the sheriff. This officer testified that appellant seemed cool and unconcerned, displaying a "smartish attitude." He stated

that the accused voluntarily confessed his guilt, after having been warned that any statement he might make could be used as evidence against him. In his confession appellant said that his passion had been aroused during a trip with a man and two women as passengers. He tried to go up to the women's hotel room, but the desk clerk refused permission. Appellant had formerly been in the habit of spending the night with a woman of his acquaintance, and he decided to go to the house where she had lived, not knowing whether it was still her residence. Finding the door unlocked he entered the house and saw the prosecutrix lying asleep. He picked up the sleeping child and carried her to his taxicab. From this point his confession is in substance the same as the prosecutrix' testimony, except that he explicitly admits penetration and the act of intercourse. There was a great deal of additional testimony, which we need not summarize except as it touches appellant's contentions.

I. The first contention, in the order of events at the trial below, is that a copy of the information was not served upon the accused at least forty-eight hours before the arraignment. Ark. Stats. (1947), § 43-1204. This contention is based on a deputy sheriff's testimony that he served the bench warrant but could not say whether a copy of the information was attached. This uncertainty was eliminated, however, by the testimony of the prosecuting attorney, who stated that he watched the clerk make out the bench warrant, attach the information, and hand the documents to the deputy sheriff. The accused was in the courtroom at the time, and the prosecuting attorney saw him receive both instruments. This occurred on Wednesday morning; the arraignment took place on Friday afternoon. This testimony sustains the finding that the information was properly served.

II. During the selection of the jury the prosecuting attorney was permitted to ask each juror if he had any conscientious scruples against the imposition of the death penalty. The statute defines implied bias as including such conscientious opinions as would preclude the juror from finding the defendant guilty of an offense punishable by death. Ark. Stats. (1947), § 43-1920. It is ar-

gued that the State should have been allowed to inquire only whether the juror's conscience would preclude his finding the defendant guilty, thereby permitting the service of jurors who would vote for a verdict of guilty but approve only the alternative penalty of life imprisonment. The history of our statutes rebuts this suggestion. When the statute defining implied bias was enacted the death penalty was mandatory; so it was then sufficient for the legislature to refer merely to a finding of guilt, the punishment following as a matter of course. Not until 1915 did the legislature give the jury the option of imposing life sentences in capital cases. *Ibid.*, § 43-2153. The legislature evidently meant for the jury to exercise its discretion in selecting the punishment, but it is obvious that a juror can exercise no discretion if his conscience does not permit him to vote for the death penalty in any case. The statutory history in Idaho has been identical with our own, and there it is held proper for the State to inquire whether a juror has scruples against capital punishment. *State v. Wilson,* 41 Idaho 616, 243 P. 359. Among many other cases approving this inquiry when the jury in its discretion may impose a life sentence are: *Shank v. People,* 79 Colo. 576, 247 P. 559; *State v. Leuch,* 198 Wash. 331, 88 P. 2d 440; *State v. Favorito,* 115 N.J.L. 197, 178 A. 765.

III. The defense counsel sought to ask a prospective juror if he would feel obligated to impose the death penalty rather than life imprisonment upon a finding of guilty. There was no prejudicial error in the trial court's refusal to allow this inquiry. Appellant argues that his question was merely the converse of the State's inquiry as to conscientious scruples, but we are unable to agree. The trial court has no discretion in permitting the State's inquiry, for the statute expressly recognizes such scruples as a cause for challenge. There is no corresponding statutory recognition of implied bias in favor of capital punishment; so the matter rests within the trial court's discretion. We have pointed out that the possible causes of bias are infinite. *Pierce v. Sicard,* 176 Ark. 511, 3 S.W. 2d 337. It is for this reason that the trial court is necessarily given a broad discretion in con-

trolling the examination of veniremen. Here the trial court stated that he did not think the juror could give a definite answer to the question without knowing all the evidence to be presented. In the absence of anything in the juror's earlier interrogation to indicate that he had a marked predilection for capital punishment we have no basis for finding an abuse of discretion.

IV. It is argued that the prosecutrix, at the age of eight, is not shown to have been a competent witness. This too is a matter that is primarily for the trial court to decide, since he is best able to judge the child's intelligence and understanding of the necessity for telling the truth. Wigmore on Evidence, § 507. In criminal cases we have approved the trial court's action in allowing children as young as this prosecutrix to testify. *DeVoe v. State*, 193 Ark. 3, 97 S.W. 2d 75; *Hudson v. State*, 207 Ark. 18, 179 S.W. 2d 165.

V. Several contentions stem from the State's introduction of appellant's confession. It is first argued that the *corpus delicti* had not been established, as the prosecutrix did not describe the act of penetration. If it were necessary that this element of rape be proved in every case by an eye-witness, the accused could not ordinarily be convicted if the prosecutrix' vision had been obscured by darkness, unconsciousness or any other cause. But that is not the law; penetration, like other facts, may be proved by means other than an account based on visual observation. Here the prosecutrix stated that the accused removed her panties, opened his trousers, got on top of her and caused her to suffer pain. In addition to this testimony the record shows her physical condition immediately after the assault, a physician's opinion that she had been entered, and the state of appellant's clothing when he was arrested. In view of this uncontradicted testimony the jury could hardly have reached any conclusion except that penetration had occurred, even if the confession had not been introduced.

VI. As we have seen, the appellant first confessed his guilt to the sheriff on the evening of his return to Arkansas. Other witnesses then came into the room,

and the story was repeated in their presence. The next morning the accused was put under oath and interrogated by the prosecuting attorney, a stenographic record of this proceeding being made. At the trial the sheriff was first examined in the judge's chambers; the court, over the appellant's objection, ruled that the confession was voluntarily made. The witness was then permitted to detail the confession in the jury's presence. The State then offered the transcript of the later interrogation, the reporter having verified its accuracy. The defense objected on the ground that since the transcript had not been signed it amounted merely to an oral confession, so that the reporter could use the transcript only to refresh his recollection of what was said. In effect the court sustained this objection, as a ruling was reserved and the transcript was not later admitted in evidence.

It is now urged that it was error to permit the prosecuting attorney to refer to the third version of the confession in his opening statement to the jury, since the written transcript was not introduced. We have held, however, that a narration of a confession in the opening statement is reversible error only if the confession is not later introduced in evidence. *Smith v. State,* 205 Ark. 1075, 172 S.W. 2d 248. Here the prosecuting attorney, in opening the case, detailed the contents of the first oral confession only; all he said about the third version was that the accused repeated the statements already made. In any event, a complete answer to appellant's contention is that before the State rested it had introduced witnesses who narrated each of the three versions of the confession—which in substance were all alike. Thus it cannot be said that the opening statement contained any version of the confession that was not later brought before the jury.

An allied contention is that the court erred in permitting oral proof of a confession later reduced to writing. It will be remembered, however, that the written transcript was excluded upon appellant's insistence that it could be used only to refresh the reporter's recollection of an oral confession. Appellant cannot be permitted to have the transcript excluded in the trial court upon the

theory that the confession was oral and then urge reversal here upon the theory that the confession was written.

VII. Appellant complains of the court's failure to instruct the jury not to consider the confession unless it was voluntarily made. The testimony that the confession was voluntary is undisputed. Several witnesses described the attendant circumstances; the accused did not take the stand to contradict their statements. Under our practice the question whether the confession was voluntary goes to the jury only if the evidence raises a doubt as to this issue. *Nelson v. State,* 190 Ark. 1078, 83 S.W. 2d 539. Here the State's uncontradicted evidence, if believed by the jury, did not raise a doubt; so the trial court was not required to submit the issue on its own motion.

We have held, however, that since the jury need not credit the officer's statement that no force or threats were used in obtaining a confession, the accused is entitled to an instruction if he asks for it, even though the State's proof is not contradicted. *Henry v. State,* 151 Ark. 620, 237 S.W. 454. Thus this issue narrows down to the question of whether the appellant requested a correct instruction on the subject. The record shows that he did not. When the instructions were being discussed in chambers the trial court submitted a proposed instruction that would have told the jury they were not to consider the confession unless they found, among other things, that it was voluntarily made. Appellant objected to the instruction as offered and asked that there be added a statement that the confession must have been made "without duress, fear, intimidation, hope of reward, or without any inquisitorial methods." The court refused the modification and later withdrew its own proposed instruction, without objection by the accused.

There was no error in the court's action, as these facts do not show a request for a correct instruction. If we assume that the court's instruction was correct, it certainly was not requested by appellant. On the contrary, he objected to it when it was offered and did not

object when it was withdrawn. What he did request was an instruction more favorable to him than the law requires: namely, that the confession must have been made "without inquisitorial methods." The first definition of "inquisitorial" is: "After the manner of an inquisitor." An inquisitor is defined as: "One who makes inquiry or investigation; specif., an officer of the law whose duty it is to investigate, as a sheriff or coroner." Funk & Wagnalls New Standard Dictionary. Thus the jury could properly have taken the instruction as modified to mean that the confession could not be considered if it was obtained by the sheriff in the course of an investigation or inquiry. As this is not a correct declaration of law, the instruction as modified was properly refused.

VIII. It is argued that the trial court erroneously refused to instruct the jury as to the lesser offense of assault with intent to commit rape. Such an instruction is unnecessary when the facts establishing the principal offense cannot be interpreted as proving the lesser offense instead. *Whittaker v. State,* 171 Ark. 762, 286 S.W. 937. Our recital of the facts shows that if rape was intended it was undoubtedly consummated. It was stated by a physician on cross-examination, however, that the prosecutrix' injuries could have been caused by the use of a man's hands. The argument now is that the accused may be a sexual pervert (he was so characterized by one witness for the defense) who did not either intend or accomplish an act of intercourse. The patent answer to this suggestion is that the proof still does not show the possibility of an assault with intent to rape; for one can intend to commit rape only if he intends to have sexual intercourse with his victim.

There are many other assignments of error. We have painstakingly examined them all, as well as the other objections appearing in the transcript. They pertain to matters of criminal law and procedure that are firmly established in the State's favor by statutes and decisions of long standing. It would add nothing to this opinion to include a discussion of all the errors assigned. Our summation of the evidence, winnowed from four

944

hundred pages of testimony, demonstrates the seriousness of the offense and the want of mitigating circumstances. We are convinced that appellant was fairly tried under law and that the evidence fully sustains the verdict and judgment.

Affirmed.

## ON REHEARING

GEORGE ROSE SMITH, J.   In part VII of our original opinion in this case we held that the trial court correctly refused an instruction that would have told the jury not to consider the accused's confession unless they found it to have been made "without any inquisitorial methods." We pointed out that the jury could properly have taken this language to mean that the confession could not be considered if it was obtained by the sheriff in the course of an inquiry or investigation. Hence the proposed instruction did not correctly state the law, for we have held that even persistent questioning by officers does not vitiate a confession that is otherwise properly obtained. *Greenwood* v. *State,* 107 Ark. 568, 156 S. W. 427. We adhere to the view that in this case the requested instruction was correctly refused.

In his petition for rehearing, however, the appellant insists that earlier opinions of this court have approved the phrase "inquisitorial methods." It is true that we have used the expression on more than one occasion, but in every instance the context has made it perfectly clear that something more than mere questioning was meant. For instance, in *Spurgeon* v. *State,* 160 Ark. 112, 254 S. W. 376, we stated that of course the officers had the right to interrogate the accused, but they had no right to coerce him "by a continuous inquisition persisted in to the extent of exhausting him physically and mentally and overcoming his will." The distinction made in that case is exactly the one that is ignored in the instruction offered by appellant.

Again in *Dewein* v. *State,* 114 Ark. 472, 170 S. W. 582, we used this language: "Where threats of harm, promises of favor or benefit, inflictions of pain, a show

of violence or inquisitorial methods are used to extort a confession, then the confession is attributed to such methods." There the whole context culminated in the phrase "extort a confession," which of course means to wrest it by force, menace, duress, torture, etc. Indeed, Webster's New International Dictionary gives the phrase, "to extort confessions," as illustrative of correct usage. No doubt the opinion in the *Dewein* case led to the instruction quoted in *Robinson* v. *State,* 177 Ark. 534, 7 S. W. 2d 5, in which the language of the earlier opinion—including the word "extort"—is embodied almost verbatim. Thus it is clear that our earlier cases have sanctioned a reference to inquisitorial methods only when the context brings out the difference between a permissible investigation and a prohibited extortion. The failure to make this distinction is the vice in the instruction offered below, for the instruction would have misled the jury concerning the law.

The petition for rehearing is denied.