Lonnie MITCHELL, Petitioner,

v.

Lee HENSLEE, Superintendent of Arkansas State Penitentiary, Respondent.

No. PB 62 C 24.

United States District Court
E. D. Arkansas,
Pine Bluff Division.

Sept. 6, 1962.

Delector Tiller, Christopher C. Mercer, Jr., Little Rock, Ark., for petitioner.

J. Frank Holt, Atty. Gen., Thorp Thomas, Asst. Atty. Gen., Little Rock, Ark., for respondent.

YOUNG, District Judge.

This is a habeas corpus proceeding prosecuted in forma pauperis by Lonnie Mitchell, a male Negro, who in 1959 received a death sentence from the Circuit Court of Union County, Arkansas, following his conviction of having raped a 77 year old crippled white woman. The conviction was affirmed by the Supreme Court of Arkansas. Mitchell v. State, 230 Ark. 894, 327 S.W.2d 384. No application for certiorari was made to the Supreme Court of the United States.

At his trial petitioner was represented by court appointed counsel, Mr. J. S. Thomas of El Dorado, and Mr. Thomas also prosecuted the original appeal, which will herinafter be called Mitchell No. 1. Subsequently, petitioner obtained the services of his present counsel who in 1960 filed a motion in the Union County Circuit Court to vacate the 1959 conviction. The motion was denied and this was affirmed by the Arkansas Supreme Court. Mitchell v. State, 232 Ark. 371, 337 S.W.2d 663. This portion of the case will hereinafter be called Mitchell No. 2. Neither was there an application for certiorari to the Supreme Court of the United States from this decision. Still later, petitioner filed a petition for habeas corpus in the Circuit Court of Jefferson County, Arkansas (the site of the Arkansas State Penitentiary). That petition was also denied and affirmed by the Arkansas Supreme Court. Mitchell v. State ex rel. Henslee, Ark., 346 S.W.2d 201. This will hereinafter be called

Mitchell No. 3. Petitioner did not apply for certiorari to the Supreme Court of the United States from this decision just as he did not from the previous decisions. At a still later date petitioner applied to the Arkansas Supreme Court for leave to file a Writ of Error Coram Nobis based on the sole issue of insanity, and this application was denied without written opinion (see statements of counsel).

Upon the filing of the application for leave to file and prosecute in forma pauperis a petition for habeas corpus, the application was granted, the petition filed, execution stayed and an order entered setting a hearing for August 21, 1962 at 10:00 a. m. At an informal conference held on August 20, 1962 in the chambers of this court, with counsel for both petitioner and respondent present, the court announced that the formal hearing to be held the next day would be limited to introducing into the record all relevant portions of the state proceedings and giving the petitioner opportunity to present to the court the exceptional circumstances relied on by him to take this case outside the rule laid down by Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761. This rule, of course, is that a state prisoner cannot secure review of his conviction in the state court by means of habeas corpus proceedings in the federal District Court until he has exhausted all available state remedies and applied to the Supreme Court of the United States for certiorari to review adverse decisions of the highest state court, except in the event of exceptional circumstances. By delaying any hearing to permit the taking of testimony until such time as the court could consider the records of the state proceedings and determine whether such hearing would be necessary, the court was following the guide laid down in Brown v. Allen, 344 U.S. 443, at page 502, 73 S.Ct. 397, 97 L.Ed. 469, et seq., directing the District Judges on the procedure to be followed in the disposition of applications for habeas corpus by prisoners under sentence of state courts.

In the instant petition the petitioner claims that his conviction was obtained in violation of rights guaranteed by the Fourteenth Amendment to the Constitution of the United States and was for that reason void. The petition contains five alleged violations of his constitutional rights, and they are, in substance, as follows:

1. It is the practice and custom in Arkansas for Negro men to receive death sentences for rapes committed upon white women whereas white men are not sentenced to die for rapes whether committed on white or Negro women and that this alleged practice and custom constitutes an unconstitutional application of the Arkansas rape statute which violates the due process and equal protection clauses of the Fourteenth Amendment.

2. Racial discrimination was practiced in the selection of the jury.

3. Petitioner's confessions were obtained by coercion and other unlawful means and should not have been admitted into evidence.

4. Petitioner was insane at the time of the commission of the rape and is now insane.

5. Petitioner did not have the effective assistance of counsel in the course of the original proceedings against him.

We now consider these allegations in the above order.

### I

Ark.Stat.Ann. § 41–3403 (1947) provides in substance that any person convicted of rape shall suffer the punishment of death, or, if the jury so recommends, imprisonment for life. As indicated, petitioner contends that in practice this statute is so applied that Negro men who are convicted of rape upon white women usually receive the death sentence, whereas white rapists never receive the death sentence regardless of the race of their victims. This, it is said, amounts to a denial to Negro men of the equal protection of the laws.

No such argument was advanced in the trial court or urged upon the Arkansas Supreme Court in the original appeal. It was first brought up in Mitchell No. 2 and again brought up in Mitchell No. 3. It is well established that federal constitutional questions not raised in the original state court proceedings are waived and cannot be considered later by a federal court in the course of habeas corpus proceedings. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469. This contention could have been raised in the original State proceedings, and when petitioner failed to do so, he waived the point and cannot litigate it here.

Aside from waiver, it should be pointed out that it is by no means clear that Negro men are invariably sentenced to death upon conviction for rape while white men are never sentenced to death for rape in Arkansas. In this regard see Note 1 to the opinion of the Arkansas Supreme Court in Mitchell No. 3:

"Arkansas cases have not yet been digested by race. On the point here alleged, if it can properly be termed a point, a cursory research discloses Needham v. State, 215 Ark. 935, 224 S.W.2d 785, to be a recent case affirming a judgment based upon a jury verdict assessing the death penalty to a white person convicted of rape. Almost all of the cases found made no reference whatever to race, thereby rendering it impossible to tell the race of the condemned."

### II

Concerning the allegation of racial discrimination in the selection of the jury, the panel from which the trial jury was selected was not objected to at the original trial nor was this matter urged upon the Arkansas Supreme Court in the original appeal, and this point was therefore waived just as number 1 above. It should be pointed out, however, that a Motion to Quash was filed in regard to the first panel selected by the jury commissioners in which racial discrimination was the basis for the Motion. The Circuit Judge promptly granted the Motion, quashed the panel, and ordered the jury commissioners to select a new panel of

jurors. He further instructed them that they were not to make any discrimination in the selection of this panel because of race, color or creed. According to the testimony of the Sheriff of Union County, the new regular panel consisted of twenty-five whites and five Negroes; the alternate panel consisted of thirty-three whites and seven Negroes; and the actual trial jury consisted of ten white persons and two Negroes. As was said previously, no objection was made or motion filed in regard to this new panel.

### III

■ Two confessions of the defendant were admitted into evidence at the trial. The first was a confession of robbing the prosecuting witness and the second was a confession of rape of the same woman. Petitioner made no objection to the first confession and the only objection made to the second confession was that it was made prior to the arraignment of petitioner on the charge confessed to and prior to his having the benefit of counsel. No objection was made to either confession on the ground that the petitioner had been threatened, physically abused or otherwise coerced into making the confession, and this point was therefore waived.

Concerning this point, it should be pointed out that the record is replete with the voluntariness of these confessions, and there is no evidence indicating that any coercion was used on the petitioner to obtain the confessions. In fact, the petitioner himself stated in the Judge's chambers during the course of the trial in response to a question from his counsel that he had been well treated by the officers while in the County Jail.

### IV

■ Neither was any issue of insanity raised at the trial. Of course, this is not dispositive of the matter. However, present counsel for petitioner and for the respondent agreed in open court, for the purposes of this record, that while the petition for leave to file Writ of Error Coram Nobis was pending in the Arkansas Supreme Court, petitioner was examined by a psychiatrist and a psychologist of his own choice and also at the request of the Arkansas Supreme Court, by psychiatrists of the Arkansas State Hospital, and all found him to be legally sane. These reports are on file in the Arkansas Supreme Court and were considered by that tribunal in disposal of the Motion. Further, counsel for petitioner stated that he had no further evidence to present on this point and did not intend to press it.

### V

The remaining question raised by this petition is the allegation that petitioner did not have the effective assistance of counsel. It is apparently the contention of petitioner that his court-appointed counsel did not effectively represent him in that he failed to raise at the trial the four points that have been hereinabove disposed of. However, from the discussion of each of these points in this opinion, it does not appear that any of them has merit, and counsel (whether court-appointed or privately retained) being an officer of the court, cannot be expected to and should not raise an objection that has no validity. Petitioner might also be of the opinion that his court-appointed counsel should have filed an application for certiorari to the United States Supreme Court from Mitchell No. 1. However, present counsel failed to apply for certiorari from both Mitchell No. 2 and Mitchell No. 3, and present counsel were privately retained. In any event it does not appear necessary to go into the merits of petitioner's court-appointed counsel although the Court does want to state after a thorough review of the record that it is clear that petitioner was well and adequately represented at his trial.

■ This point was not raised at the trial nor on the first appeal, but that is not dispositive of the matter because counsel representing petitioner at that time could not be expected to raise his own inadequacy, if it were so. This point was raised in Mitchell No. 2 and

Mitchell No. 3, but in neither proceeding was an application made to the United States Supreme Court for a Writ of Certiorari to review the adverse decisions of the Arkansas Supreme Court. This Court believes that the failure to exhaust this possible remedy precludes the raising of this issue in this Court under the rule in Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761, unless there is some exceptional circumstance to take it outside the rule. At the hearing held in this Court on August 21, 1962 for that purpose, counsel for petitioner submitted two matters that he believed to be exceptional circumstances. One, that Arkansas has no adequate post-conviction procedure; and, two, that in both Mitchell No. 2 and Mitchell No. 3 the trial judges did not allow petitioner to present any evidence, and there being no record, there was nothing for the United States Supreme Court to consider. There are at least two post-conviction procedures which petitioner did follow. There was, of course, one additional post-conviction remedy available to a person convicted by an Arkansas State Court that was not utilized by petitioner, application for Writ of Certiorari to the United States Supreme Court, which petitioner failed to use in three different instances. Concerning the claimed absence of an adequate record, the case of Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61 holds that where there is no record, the United States Supreme Court will decide from the facts well pleaded whether or not the petitioner is entitled to a hearing on a Constitutional question. Therefore, this Court must and does find that there are no exceptional circumstances involved in this case which would allow this Court to consider this matter in view of the rule of Darr v. Burford, supra. This, of course, applies equally to all five of the allegations raised by petitioner.

One or more phases of this case has been considered by the Supreme Court of Arkansas on four separate occasions. On the first one, the appeal from conviction in the lower court, the appellate court had before it the pleadings, the testimony, and briefs of counsel. In its opinion the Court gave consideration to each point raised by the then appellant and its reasons for affirmance of conviction in the lower court.

Under these circumstances, as stated in Brown v. Allen, supra, p. 504, 73 S.Ct. p. 445, "It certainly would make only for burdensome and useless repetition of effort if the federal courts were to rehear the facts in such cases." The Court finds, therefore, that there is no necessity for this Court to hold a hearing for the purpose of receiving evidence.

The record discloses beyond question that petitioner was convicted of a heinous crime after a fair and impartial trial. The petition will be denied.